# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| JAMES MELVIN FULTZ, ) | |
| ) | Case No. 14-cv-5132 |
| Plaintiff, ) | |
| ) | Judge Robert M. Dow, Jr. |
| v. ) | |
| ) | |
| JOSH HORTON, in his individual capacity, ) | |
| and CITY OF AURORA ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff James Fultz brings this retaliatory prosecution action against Defendants Officer Josh Horton and the City of Aurora. Currently before the Court is Defendants' motion to dismiss [34]. For the reasons set forth below, the Court grants Defendants' motion [34] with prejudice as to the federal claims asserted in Counts I and II, as those counts are time barred, and without prejudice as to the state law claims advanced in Counts III, IV, and V. A final judgment will be entered as to Counts I and II and the case will be closed.

## I. Background

On July 3, 2014, Plaintiff filed a *pro se* complaint against Defendants Horton and the City of Aurora. [1.] On February 23, 2016, the Court recruited counsel for Plaintiff. [24.] Plaintiff filed an amended complaint through his counsel on May 12, 2016. [31.]

In his amended complaint, Plaintiff alleges that on June 10, 2009, Plaintiff and his mother, Beulah Fultz ("Ms. Fultz"), hosted a barbeque in their yard in Aurora, Illinois. [31, at ¶ 7.] Anthony Jackson, a friend of the family, attended the barbeque. [*Id.* at 9.] Aurora police officers Jay Ellis and Douglas Rashkow were patrolling the area and stopped at the Fultz residence. [See *id.* at ¶¶ 10–11.] Plaintiff contends that Ellis and Rashkow entered the yard,

which surprised and concerned Ms. Fultz. [*Id.* at ¶¶ 11–12.] When Ms. Fultz asked the officers to leave, one of the officers informed her that Jackson had an outstanding warrant. [*Id.* at ¶¶ 13–14.] Ellis and Rashkow called for backup, and Aurora police officers Josh Horton (the Defendant in this case), Ryan Feeney, Andrew Wright, and Nicole Petersen arrived on the scene. [*Id.* at ¶ 16.] Some of the officers escorted Jackson away from the Fultz home and arrested him. [*Id.* at ¶ 17.] The rest of the officers remained at the home, without permission of the Fultz family. [*Id.* at ¶ 18.]

Plaintiff alleges that Ms. Fultz decided to call a supervisor at the Aurora Police Department to encourage the officers to leave. [*Id.* at ¶ 19.] Plaintiff contends that Rashkow approached Ms. Fultz and told her that she was under arrest. [*Id.* at ¶ 20.] According to Plaintiff, when Ms. Fultz asked why, Petersen intervened and told Ms. Fultz to "walk off" and not to argue with Rashkow. [*Id.* at ¶¶ 21–22.] Plaintiff contends that Ms. Fultz then turned to go into her home, but as she was turning around, Rashkow pushed her into an iron porch railing, hurting her in the process. [*Id.* at ¶¶ 23–24.] Plaintiff alleges that he approached Rashkow with his hands up to show that he had no weapon and asked Rashkow what was happening. [*Id.* at ¶ 25.] Rashkow allegedly yelled, "Get out of the way," threw Plaintiff on the ground, and pushed his taser into Plaintiff's chest. [*Id.* at ¶¶ 26–27.] Plaintiff alleges that Rashkow then rolled him over, handcuffed him, and arrested him. [*Id.* at ¶ 28.]

Plaintiff further alleges that at this point, Ms. Fultz ran into her home and proceeded to the washroom, but Defendant Horton entered the Fultz home without permission and pushed the door to the washroom open. [*Id.* at ¶¶ 29–30.] Plaintiff contends that Ms. Fultz was startled and began having chest pains and hyperventilating. [*Id.* at ¶ 31.] Plaintiff asserts that one of the officers called an ambulance, which took Ms. Fultz to the hospital, where she stayed for many

hours. [*Id.* at ¶¶ 32–33.] Plaintiff asserts that he never touched Defendant Horton and that he did not interact with Defendant Horton on June 10, 2009, the day of the barbeque. [*Id.* at ¶¶ 34–35.]

That same day, Plaintiff was charged with obstructing a peace officer for allegedly attempting to prevent his mother's arrest by Rashkow. [*Id.* at ¶ 36.] On or about June 18, 2009, Ms. Fultz filed a written complaint with the Aurora Police Department Office of Professional Standards against Defendant Horton and Rashkow for their alleged misconduct at the barbeque. [*Id.* at ¶ 37.] On or about July 7, 2009, the Office of Professional Standards opened an investigation based on Ms. Fultz's complaint. [*Id.* at ¶ 38.]

On or about July 28, 2009—more than six weeks after the barbeque incident—Defendant Horton signed a complaint charging Plaintiff with aggravated battery for allegedly pushing him in the chest on June 10, 2009. [*Id.* at ¶ 36.] On or about April 5, 2010, a jury trial was held in Kane County on the charges against Plaintiff for obstructing a peace officer and aggravated battery.[1] [*Id.* at ¶ 40.] At trial, Plaintiff's attorney requested permission from the judge to introduce evidence that Defendant Horton did not sign the aggravated battery complaint until 40 days after the incident and after Ms. Fultz filed a complaint against Defendant Horton and Rashkow. [*Id.* at ¶¶ 41–42.] The court denied Plaintiff's attorney's request to introduce this information into evidence. [*Id.* at ¶ 43.] Ellis, Rashkow, Feeney, and Defendant Horton testified at Plaintiff's trial. [*Id.* at ¶ 44.] Plaintiff alleges that Ellis, Rashkow, Feeney testified that they did not see Plaintiff push Defendant Horton and that the only evidence presented about Plaintiff pushing Defendant Horton was Defendant Horton's own testimony. [*Id.* at ¶¶ 45–46.] The jury found Plaintiff guilty of both counts, and Plaintiff was sentenced to three years in the Illinois

---

[1] Case No. 2009-CV-1096.

Department of Corrections ("IDOC"). [*Id.* at ¶¶ 47–48.] Plaintiff served 19 months in the IDOC. [*Id.* at ¶ 49.]

On June 11, 2012, after Plaintiff was released from prison, the Illinois Appellate Court reversed and remanded Plaintiff's aggravated battery conviction for a new trial, holding that the trial court made two errors, which cumulatively deprived Plaintiff of a fair trial. [See *id.* at ¶¶ 50–51; see also *People v. Fultz*, 971 N.E.2d 596, 598 (Ill. App. Ct. 2012).] According to the Illinois Appellate Court, the trial court erred in not allowing Plaintiff to challenge Defendant Horton's credibility with the issue of bias when the court prevented Plaintiff from cross-examining Defendant Horton about the 40 day delay in signing the aggravated battery complaint and when, if ever, he became aware of Ms. Fultz's complaint. Additionally, the Appellate Court held that the trial court erred in instructing the jury that it could consider Plaintiff's prior conviction only to assess his credibility, over Plaintiff's objection, as this instruction should only have been given at Plaintiff's request. The Appellate Court explained that the trial came down to a credibility contest between Plaintiff and Defendant Horton and that the trial court's erroneous rulings went to the heart of that issue. On October 17, 2013, after remand, the Kane County State's Attorney moved to dismiss Plaintiff's aggravated battery charge via a *nolle prosequi*, and the court granted the motion. [*Id.* at ¶ 52.] Plaintiff contends that he "is still involved in court regarding the aggravated battery charged" and that he is attempting to obtain a Certificate of Innocence from the Circuit Court of Kane County.

Plaintiff filed a five-count amended complaint on May 12, 2016. In Count I, Plaintiff brings a retaliatory prosecution claim against Defendant Horton (reframed in the parties' briefs as a claim of retaliatory inducement to prosecute), alleging that Defendant Horton did not have probable cause to complain of Plaintiff committing an aggravated battery against him, that Ms.

Fultz's complaint against Defendant Horton was an exercise of her constitutional right of freedom of speech that caused Horton to harbor animus against the Fultz family, and that Plaintiff would not have been charged with aggravated battery but for Defendant Horton's retaliatory animus against him and his family. In Count II, Plaintiff brings a due process claim against Defendant Horton, alleging that by signing a complaint falsely stating that Plaintiff pushed him on June 10, 2009 and fabricating testimony at Plaintiff's criminal trial, Defendant Horton deprived Plaintiff of his constitutional right to due process. In Count III, Plaintiff brings a state law claim of malicious prosecution against Defendant Horton. In Counts IV and V, Plaintiff brings claims against the City of Aurora, alleging that the City is liable for Defendant Horton's actions under respondeat superior (Count IV) and that the City is responsible for indemnifying Defendant Horton (Count V). Plaintiff seeks compensatory damages in an amount in excess of $75,000, punitive damages, and attorney's fees and costs. On June 29, 2016, Defendants filed a motion to dismiss [34].

**II.     Legal Standard**

To survive a Rule 12(b)(6) motion to dismiss for failure to state a claim upon which relief can be granted, the complaint first must comply with Rule 8(a) by providing "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), such that the defendant is given "fair notice of what the * * * claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)) (alteration in original). Second, the factual allegations in the complaint must be sufficient to raise the possibility of relief above the "speculative level." *E.E.O.C. v. Concentra Health Servs., Inc.*, 496 F.3d 773, 776 (7th Cir. 2007) (quoting *Twombly*, 550 U.S. at 555). "A pleading that offers 'labels and conclusions' or a 'formulaic recitation of the elements

of a cause of action will not do.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 555). Dismissal for failure to state a claim under Rule 12(b)(6) is proper "when the allegations in a complaint, however true, could not raise a claim of entitlement to relief." *Twombly,* 550 U.S. at 558. In reviewing a motion to dismiss pursuant to Rule 12(b)(6), the Court accepts as true all of Plaintiff's well-pleaded factual allegations and draws all reasonable inferences in Plaintiff's favor. *Killingsworth v. HSBC Bank Nevada, N.A.*, 507 F.3d 614, 618 (7th Cir. 2007).

"A statute of limitations defense, while not normally part of a motion under Rule 12(b)(6), is appropriate where the allegations of the complaint itself set forth everything necessary to satisfy the affirmative defense, such as when a complaint plainly reveals that an action is untimely under the governing statute of limitations." *Andonissamy v. Hewlett–Packard Co.*, 547 F.3d 841, 847 (7th Cir. 2008) (internal quotation marks omitted). The Court may take judicial notice of matters in public record, including court documents, in deciding a motion to dismiss without converting it to a motion for summary judgment. *Henson v. CSC Credit Servs.*, 29 F.3d 280, 284 (7th Cir. 1994).

**III.  Analysis**

Defendants move to dismiss on multiple grounds. Defendants argue that (1) Plaintiff's federal § 1983 claims for retaliatory inducement to prosecute and deprivation of due process are barred by the statute of limitations; (2) Plaintiff fails to state a claim for retaliatory inducement to prosecute because he has not alleged a causal nexus between Defendant Horton's claimed animus and the decision of the prosecutor to seek an indictment; (3) Plaintiff's claims for retaliatory inducement to prosecute and malicious prosecution should be dismissed because of issue preclusion; (4) Defendant Horton is entitled to qualified immunity with respect to

Plaintiff's claim for retaliatory inducement to prosecute; and (5) Defendant Horton is entitled to absolute immunity with respect to Plaintiff's claim for deprivation of due process. The Court will address Defendants' first argument, which is dispositive as to Plaintiff's federal claims.

A.  **Federal Claims**

Defendants argue that Plaintiff's federal claims for retaliatory inducement to prosecute (Count I) and deprivation of due process (Count II) are barred by the two year statute of limitations for § 1983 claims. According to Defendants, Plaintiff's retaliatory inducement to prosecute claim accrued no later than October 7, 2009, when Plaintiff was indicted, and Plaintiff's due process claim accrued on April 5, 2010, when Plaintiff's criminal trial took place. Alternatively, Defendants argue in their reply brief that the due process claim accrued no later than June 11, 2012, when the Illinois Appellate Court reversed Plaintiff's aggravated battery conviction and remanded the case for a new trial. [42, at 3.] Plaintiff brought this action on July 3, 2014, and thus Defendants argue that Plaintiff's claims are time-barred. Plaintiff argues, in contrast, that the statute of limitations began to accrue for both of these federal claims on October 17, 2013, when, on remand, the state trial court granted the prosecutor's motion to dismiss Plaintiff's aggravated battery charge via a *nolle prosequi*.

Section 1983 does not have an express statute of limitations, so federal courts hearing claims under § 1983 adopt the forum state's limitations period for personal injury claims. *Ashafa v. City of Chicago*, 146 F.3d 459, 461 (7th Cir. 1998). In Illinois, the statute of limitations for § 1983 claims is two years. *Gekas v. Vasiliades*, 814 F.3d 890, 894 (7th Cir. 2016). Although the limitations period for § 1983 claims is based upon state law, federal law determines when such claims accrue. *Id.* Generally, a § 1983 claim accrues—and thus the statute of limitations period begins to run—"when the plaintiff has a complete and present cause of action, that is,

7

when the plaintiff can file suit and obtain relief." *Taylor v. City of Chicago*, 80 F. Supp. 3d 817, 823 (N.D. Ill. 2015) (quoting *Wallace v. Kato*, 549 U.S. 384, 388 (2007)) (internal quotation marks omitted). However, under *Heck v. Humphrey*, a claim that directly attacks the validity of a conviction does not accrue until the conviction has been invalidated. 512 U.S. 477, 486–87 (1994); see also *Parish v. City of Elkhart*, 614 F.3d 677, 681 (7th Cir. 2010). Thus, under *Heck*'s deferred accrual rule, the statute of limitations is tolled for a *Heck*-barred claim until the conviction has been set aside. See *Moore v. Burge*, 771 F.3d 441, 446 (7th Cir. 2014) ("*Heck* holds that a claim that implies the invalidity of a criminal conviction does not accrue, and the statute of limitations does not begin to run, until the conviction is set aside by the judiciary or the defendant receives a pardon."); *Ellis v. City of Chicago*, 2016 WL 212489, at *4 (N.D. Ill. Jan. 19, 2016) ("*Heck*'s deferred-accrual rule tolls the statute of limitations for § 1983 claims while they are barred.").

Here, Plaintiff's retaliatory inducement to prosecute claim and his due process claim both attack the validity of his conviction. The First Amendment prohibits government officials from subjecting an individual to retaliatory action, including criminal prosecutions, for speaking out. *Hartman v. Moore*, 547 U.S. 250, 256 (2006). Additionally, an individual may bring a § 1983 claim against an official "who may have influenced the prosecutorial decision but did not himself make it, and the cause of action will not be strictly for retaliatory prosecution, but for successful retaliatory inducement to prosecute." *Peals v. Terre Haute Police Dept.*, 535 F.3d 621, 626 (7th Cir. 2008) (quoting *Hartman*, 547 U.S. at 262) (internal quotation marks omitted). To succeed on such a claim, the plaintiff "must show that the nonprosecuting official acted in retaliation, and must also show that [the official] induced the prosecutor to bring charges that would not have been initiated without his urging." *Id.* (quoting *Hartman*, 547 U.S. at 262) (internal quotation

marks omitted) (alteration in original). Additionally, the plaintiff must show that there existed no probable cause to support the underlying charge. *Id.* Here, Plaintiff's retaliatory inducement to prosecute claim alleges that Plaintiff never touched Defendant Horton and that Plaintiff was only charged with aggravated battery because of Defendant Horton's retaliatory animus against Plaintiff and his family, which was created by Ms. Fultz's complaint against Horton. Thus, this claim necessarily challenges the validity of Plaintiff's aggravated battery conviction.[2]

Plaintiff's §1983 due process claim alleges that Plaintiff never touched Defendant Horton and that Defendant Horton deprived Plaintiff of due process by signing a complaint that falsely stated that Plaintiff pushed him and by fabricating testimony at Plaintiff's criminal trial. Plaintiff further alleges that as a result of Defendant Horton's fabricated testimony, Plaintiff was deprived of his constitutional right to liberty by serving 18 months in prison. This claim also directly attacks the validity of Plaintiff's aggravated battery conviction, as the only evidence presented at trial in support of this conviction was Defendant Horton's own testimony.[3]

---

[2] The Court notes that it is doubtful that Plaintiff has stated a valid claim for retaliatory inducement to prosecute, since he has not alleged that he engaged in First Amendment protected activity. Rather, Plaintiff alleges that Defendant Horton harbored animus against him because of Ms. Fultz's exercise of her First Amendment rights in filing a written complaint with the Aurora Police Department. The Court is not convinced that a retaliatory inducement to prosecute claim can be based on a retaliatory animus that does not stem from a plaintiff's First Amendment protected activity, but rather from a third-party's protected activity. However, Defendants do not challenge this aspect of Plaintiff's complaint, and the issue has not been briefed by the parties. Since the Court ultimately concludes that Plaintiff's retaliatory inducement to prosecute claim is barred by the statute of limitations, the Court need not further address this issue.

[3] The issue of whether a plaintiff can bring a federal due process claim based on evidence fabrication has been the subject of much debate in this district and in the Seventh Circuit. See *Patrick v. City of Chicago*, 2016 WL 5792309, at *10 (N.D. Ill. Oct. 4, 2016). Until recently, the dominant view was that plaintiffs were required to bring due process fabrication claims as state law malicious prosecution claims, rather than as federal § 1983 claims. See *id.* (citing *McCann v. Mangliardi*, 337 F.3d 782, 786 (7th Cir. 2003); *Newsome v. McCabe*, 256 F.3d 747, 750–51 (7th Cir. 2001)). However, more recent cases have held that the availability of a malicious prosecution claim under state law no longer forecloses a due process claim on based on the fabrication of evidence. See *id.* (citing *Saunders–El v. Rohde*, 778 F.3d 556, 560 (7th Cir. 2015)); *Whitlock v. Brueggemann*, 682 F.3d 567, 581 (7th Cir. 2012). Yet another Seventh Circuit case, *Stinson v. Gauger*, recognized tension in Seventh Circuit case law, noting that

Because both claims attack the validity of his aggravated battery conviction, Plaintiff's claims for retaliatory inducement to prosecute and deprivation of due process did not accrue until that conviction was invalidated. Plaintiff's state court conviction was invalidated on June 11, 2012, when the Illinois Appellate Court reversed his conviction. Thus, the Court concludes that Plaintiff was required to bring his claims by June 11, 2014, and since Plaintiff did not file his civil case until July 3, 2014—just over two years after his conviction was reversed—his claims are time-barred.

Plaintiff argues that his conviction was not set aside—and thus the statute of limitations did not begin to run—until October 17, 2013, when the criminal charge was dismissed on remand. However, the *Heck* bar ceases to apply once the "conviction or sentence has been *reversed on direct appeal*, expunged by executive order, declared invalid by a state tribunal authorized to make such a determination, or called into question by a federal court's issuance of a writ of habeas corpus." *Heck*, 512 U.S. 477 at 487 (emphasis added). Here, it is uncontested that Plaintiff's state court conviction was reversed on direct appeal on June 11, 2012. Thus, Plaintiff's § 1983 claim accrued on June 11, 2012. See, *e.g.*, *Rodriguez v. Cook Cty., Ill.*, 664 F.3d 627, 630 (7th Cir. 2011) (affirming district court's dismissal of § 1983 claims based on statute of limitations and explaining that plaintiff's § 1983 claim accrued "when the state's court

---

A line of cases in this circuit has squarely held that a police officer's fabrication of evidence is not actionable as a violation of due process as long as state law provides an adequate remedy for the fabrication—usually in the form of a malicious prosecution tort action. [citing *McCann* and *Newsome*]. *Whitlock* did not address this line of cases. If they remain good law, then the due-process claim against prosecutors recognized in *Whitlock* and applied in *Fields II* might not be available against police officers * * * unless state law lacks an adequate tort remedy.

799 F.3d 833 (7th Cir. 2015), reh'g en banc granted, opinion vacated (Dec. 3, 2015). It appears that a due process claim based on fabricated evidence is at least arguably available, see *Patrick*, 2016 WL 5792309, at *13, but this Court need not decide the issue, since the Court ultimately concludes that Plaintiff's § 1983 due process claim is barred by the statute of limitations.

of appeals reversed his conviction"); *Taylor*, 80 F. Supp. 3d at 823 (holding that plaintiff's § 1983 Fifth Amendment claim did not begin to accrue until his conviction was vacated).

This conclusion is further supported by *Wallace v. Kato*, in which the U.S. Supreme Court explained that the *Heck* deferred accrual rule only applies where there exists and "outstanding criminal judgment." 549 U.S. at 393 (citation and internal quotation marks omitted). *Heck* does not bar an action that would "impugn *an anticipated future conviction*." *Id.* (emphasis in original). The Supreme Court explained the impracticality of this extension of *Heck* to anticipated future convictions: "what if * * * the anticipated future conviction never occurs, because of acquittal or dismissal? Does that event (instead of the *Heck*-required setting aside of the extant conviction) trigger accrual of the cause of action? Or what if prosecution never occurs—what will the trigger be then?" *Id.* Thus, since there was no longer an extant conviction after the Illinois Appellate Court reversed Plaintiff's conviction, the *Heck* bar ceased to apply and Plaintiff's § 1983 claims accrued.[4] See *Ellis*, 2016 WL 212489, at *5 (holding that plaintiff's § 1983 Fourth Amendment false arrest claim was barred by *Heck* but that the statute of limitation would be tolled by the *Heck* deferred-accrual rule, so if the Illinois Appellate Court later overturned plaintiff's conviction, he could still bring a timely suit).

B. **State Law Claims**

Given the foregoing conclusion that both of Plaintiff's federal claims must be dismissed with prejudice on statute of limitations grounds, the Court must consider whether to exercise its supplemental jurisdiction over Plaintiff's remaining state law claims. Where a district court has original jurisdiction over some claims, it has supplemental jurisdiction over other claims that are

---

[4] If a plaintiff files a § 1983 claim before he has been convicted, it is within the power of the district court to stay the § 1983 action "until the criminal case or the likelihood of a criminal case is ended." *Wallace*, 549 U.S. at 394. If the plaintiff is ultimately convicted, and if the stayed § 1983 suit would impugn that conviction, *Heck* will require dismissal; otherwise, the § 1983 suit will proceed. *Id.*

so related that they form part of the same case or controversy. 28 U.S.C. § 1367(a); *Miller v. Herman*, 600 F.3d 726, 738 (7th Cir. 2010). If the court has dismissed all claims over which it has original jurisdiction, the court's supplemental jurisdiction persists, but the court has discretion to decline to exercise supplemental jurisdiction. 28 U.S.C. § 1367(c)(3); *Miller*, 600 F.3d at 738 (noting that the decision whether to exercise supplemental jurisdiction is "squarely within [the district court's] discretion). The general rule is that when all federal claims are dismissed, the district court should decline to exercise supplemental jurisdiction over the state law claims. *Davis v. Cook Cty.*, 534 F.3d 650, 654 (7th Cir. 2008) (quoting *Wright v. Associated Ins. Cos.*, 29 F.3d 1244, 1251 (7th Cir. 1994)). Exceptions to this general rule exist:

> (1) when the statute of limitations has run on the pendent claim, precluding the filing of a separate suit in state court; (2) substantial judicial resources have already been committed, so that sending the case to another court will cause a substantial duplication of effort; or (3) when it is absolutely clear how the pendent claims can be decided.

*Id.* (citation and internal quotation marks omitted).

Here, none of the exceptions applies. First, although the one-year statute of limitations on Plaintiff's state law malicious prosecution claim lapsed long ago, Illinois has adopted a "rule of tolling," which provides that if an action "is dismissed by a United States District Court for lack of jurisdiction, * * * then, whether or not the time limitation for bringing such action expires during the pendency of such action, the plaintiff * * * may commence a new action [in state court] within one year or within the remaining period of limitation, whichever is greater, after * * * the action is dismissed by a United States District Court for lack of jurisdiction." 735 ILCS 5/13-217; see also *Davis v. Cook County*, 534 F.3d 650, 654 (7th Cir. 2008); *White v. City of Chicago*, 149 F. Supp. 3d 974, 983–84 (N.D. Ill. 2016). In all likelihood, this means that Plaintiff may refile his state law claims in state court. Second, this Court has not yet committed

"substantial judicial resources" to considering the merits of Plaintiff's malicious prosecution claim. Third, it is not clearly apparent, based on the briefing to date, how the malicious prosecution claim would be decided. In these circumstances, the usual rule applies and dictates dismissal without prejudice of Plaintiff's state law claims in Counts III, IV, and V.[5]

**IV. Conclusion**

For the foregoing reasons, the Court grants Defendants' motion to dismiss [34]. The motion is granted with prejudice as to Counts I and II and without prejudice as to Counts III, IV, and V. A final judgment will be entered as to Counts I and II and the case will be closed.

Date: February 2, 2017

Robert M. Dow, Jr.
United States District Judge

---

[5] As noted in Plaintiff's brief, he has enjoyed the benefit of recruited counsel in this case as a consequence of counsel's membership in the Trial Bar of the Northern District of Illinois. The Court appreciates recruited counsel's pro bono efforts on behalf of Plaintiff and agrees with counsel that under the Local Trial Bar Rules there is no obligation to represent Plaintiff in any subsequent state court action—and likewise certainly no prohibition on doing so.